IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3067-FL

| | | |
|---|---|---|
| STEVEN MITCHELL DIVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| OFFICER THOMPSON, JIMMY DORMAN, GEORGE BLACKMON, JAMIE COBB, and SEAN T. DILLARD, | ) ) ) | |
| | ) | |
| Defendants.[1] | ) | |

This matter is before the court on defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, (DE 42). The motion was fully briefed and in this posture the issues raised are ripe of ruling. For the reasons that follow, the court grants the motion.

## STATEMENT OF THE CASE

Plaintiff, a state inmate proceeding pro se, commenced this action by filing motion for preliminary injunction or temporary restraining order on March 6, 2017. On May 8, 2017, plaintiff filed complaint, alleging claims for violations of his civil rights pursuant to 42 U.S.C. § 1983. On May 17, 2017, the court denied plaintiff's motion for temporary restraining order. On November 20, 2017, the court conducted its frivolity review of plaintiff's complaint and directed plaintiff to file amended complaint particularizing his claims.

Plaintiff filed amended complaint on December 11, 2017. Plaintiff's claims stem from an

---

[1] The court dismissed formerly-named defendants Cynthia Thornton and North Carolina Department of Public Safety by separate order entered January 9, 2018.

incident in which defendant Officer Thompson ("Thompson") stripped search plaintiff in a restroom at the Harnett County Correctional Institution ("Harnett C.I."), and allegedly stared at his groin area during the search. Defendants Jimmy Dorman ("Dorman") and George Blackmon ("Blackmon") allegedly conducted a faulty and biased investigation of the incident, improperly charged plaintiff with a disciplinary offense, and retaliated against plaintiff for filing an unrelated lawsuit. Plaintiff also alleges defendant Sean T. Dillard ("Dillard") violated his due process rights during the ensuing disciplinary proceedings, and defendant Jamie Cobb ("Cobb") failed to respond to his requests for assistance. As relief, plaintiff seeks compensatory and punitive damages, and a permanent injunction directing certain changes to the North Carolina Department of Public Safety's strip search policy. On January 9, 2019, the court conducted its frivolity review of the amended complaint pursuant to 28 U.S.C. § 1915(e), and allowed the action to proceed.

On August 20, 2018, the court entered case management order governing discovery and dispositive motions practice, and also appointed North Carolina Prisoner Legal Services, Inc. ("NCPLS") to represent plaintiff for the discovery phase of the case. The parties completed discovery on or about May 6, 2019. Also on May 6, 2019, NCPLS withdrew from its limited representation of plaintiff pursuant to Standing Order 17-SO-02.

On June 17, 2019, defendants filed the instant motion for summary judgment. In support, defendants rely upon memorandum of law, statement of material facts, and the following: 1) affidavit of defendant Dorman; 2) North Carolina Department of Public Safety ("DPS") Operation Searches Policy; 3) DPS Inmate Sexual Abuse and Sexual Harassment Policy; 4) DPS incident report regarding plaintiff's sexual assault allegation; 5) affidavit of defendant Thompson; 6) photographs of the Harnett C.I. K-dorm restroom; 7) plaintiff's administrative grievance relating

to the disciplinary charge; 8) affidavit of defendant Dillard; 9) DPS Inmate Disciplinary Procedures; 10) plaintiff's disciplinary file; 11) affidavit of defendant Cobb; and 12) additional administrative grievances filed by plaintiff, and relevant DPS responses. Plaintiff filed opposition on August 9, 2019, relying on 1) plaintiff's affidavits; 2) records from a state tort claim plaintiff filed against DPS; 3) DPS report concerning the alleged sexual assault; 4) declaration of Robert Gschlecht, a Harnett C.I. inmate who witnessed the incident; and 5) plaintiff's correspondence addressed to defendant Cobb.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On January 24, 2017, plaintiff was housed in the "K-3" dorm at the Harnett C.I. (Pl.'s Aff. (DE 49-1) ¶ 6). On that date, defendant Thompson, a Harnett C.I. corrections officer, informed plaintiff that he needed to conduct a search of plaintiff's locker. (Id.). Instead of searching the locker, however, defendant Thompson instructed plaintiff to follow him to the restroom for a strip search. (Id. ¶ 8). Plaintiff protested that the search was "against policy" but defendant Thompson explained the search was required. (Id. ¶ 10).

When they arrived in the restroom, defendant Thompson instructed plaintiff to "get behind the partition." (Id. ¶ 11). Plaintiff complied and began undressing. (Id. ¶¶ 12-13). As he was undressing, another inmate entered the restroom. (Id. ¶ 13). Plaintiff also noticed "SOAR staff pass by the window of the [restroom]." (Id. ¶ 13). Once plaintiff was fully nude, he observed defendant Thompson staring at his groin area. (Id. ¶ 15). Plaintiff asked defendant Thompson why he was starting at his groin, but defendant Thompson did not reply. (Id.). Robert Gschlecht witnessed the incident, and confirmed plaintiff testimony that defendant Thompson stared at

3

plaintiff's groin. (Gschlecht Aff. (DE 49-6) at 1).[2]

Defendant Thompson then instructed plaintiff to "squat and cough." (Pl.'s Aff. (DE 49-1) ¶ 15). This instruction "render[ed] the partition cover useless" because the partition did not extend to the floor. (Id.). The search ended after plaintiff complied with the squat and cough instruction and Defendant Thompson informed plaintiff that he could get dressed. (Id. ¶¶ 17-18). Plaintiff has observed different corrections officers conduct searches in the K-Dorm that did not require full nudity. (Id. ¶¶ 29, 31; see also Pl.'s Suppl. Affs. (DE 49-3)).

Plaintiff immediately wrote a grievance about the issue. (Pl.'s Aff. (DE 49-1) ¶ 19). That same day, plaintiff met with defendant Dorman, a Harnett C.I. correctional lieutenant, about the allegations in his grievance. (Id. ¶¶ 21-22; Dorman Aff. (DE 45-1) ¶ 2). When plaintiff entered defendant Dorman's office, defendant Dorman stated, "you know I'm going to write you up." (Pl.'s Aff. (De 49-1) ¶ 22). Defendant Dorman then called defendant Blackmon, a Harnett C.I. correctional captain, to the office and told him plaintiff was "PREAing"[3] defendant Thompson. (Id. ¶ 23; Cobb Aff. (DE 45-12) ¶ 19). Defendant Blackmon responded that plaintiff "has a court case after us on a PREA from awhile back." (Pl.'s Aff. (DE 49-1) ¶ 24). Defendant Dorman then responded, "well [expletive] this will be an easy one." (Id. ¶ 25).

Defendants proceeded to investigate plaintiff's claims that defendant Thompson assaulted him. During the course of the investigation, plaintiff was asked to complete a witness statement. (Dorman Aff. Ex. D (DE 45-5) at 9). Plaintiff completed the statement on January 24, 2017,

---

[2] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

[3] The acronym PREA refers to the Prison Rape Elimination Act, 42 U.S.C. § 15601-09.

which in relevant part provides:

> I told [Sergeant] Davis [and defendant Dorman] that I did not want to PREA on [defendant] Thompson. I wanted policy read to me and that I felt that [defendant] Thompson had another motive for doing the strip search. Upon hearing of the policy I wanted to withdraw the grievance because the policy as read states that [defendant] Thompson can look at my penis. It is the location where the search [occurred] and what had happened to me the last time I was at this camp that caused me to react in the way that I did. I had told Ms. Shelton in writing when I first got to this camp and put in D-Dorm which was where I had been assaulted that I want to be relocated. . . . Once again I am not PREA complaining [defendant] Thompson[,] this was a reaction to my prior assault. I made several attempts to [ask defendant Dorman] and [sergeants] Davis and Hartsell to withdraw and re-write the grievance which was answered by [defendant] Dorman by the reading of the policy. This was all I wanted. I had never been strip searched by any officer at any camp prior to this which made me feel that what [defendant] Thompson did was not appropriate I do not want a PREA done because I was not assaulted just the situation brought back the trauma of the prior assault and I wanted an explanation. I feel that this investigation is needless and [unwarranted] and I want to withdraw the grievance . . . . I do not and will not hold [defendant] Thompson in a bad light since it appears that he did his job. I have not been sexually assaulted in any form or fashion in accordance to PREA rules and I am not making any PREA complaints nor do I feel the need to activate the PREA policy or protections.

(Id. at 9-10). After obtaining this statement and conducting further investigation, defendant Dorman determined plaintiff's sexual assault allegation against defendant Thompson was unfounded. (Dorman Aff. (DE 45-1) ¶ 46).

On March 1, 2017, plaintiff was charged with violating provision A-18 of the North Carolina Inmate Disciplinary Procedures. (Pl.'s disciplinary file (DE 45-11) at 7, 18). This provision prohibits inmates from "[k]nowingly mak[ing] to any person a false oral or written allegation about a staff member that, if true, could expose the staff member to criminal liability." (DPS Inmate Disciplinary Procedures (DE 45-10) at 2). Defendant Dillard was the assigned disciplinary hearing officer. (Dillard Aff. (DE 45-9) ¶ 7). On March 22, 2017, defendant Dillard conducted the hearing, found plaintiff responsible for the infraction, and sanctioned him with,

5

among other things, loss of 30 days' good time credit. (Pl.'s disciplinary file (DE 45-11) at 2). During the hearing, defendant Dillard allegedly refused to consider a copy of Gschlecht's declaration because it was not on the proper DPS form, and failed to read certain witness statements to plaintiff at the appropriate time. (Pl.'s Aff. (DE 49-1) ¶¶ 35-36).

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial,

6

"evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in [affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489–90.

B. Analysis

1. Strip Search Claims

Plaintiff alleges the strip search violated his rights under the Fourth and Eighth Amendments because it was conducted in a manner that exposed his genitals to other inmates and staff, and that defendant Thompson stared at his genitals during the search. The court begins with the Fourth Amendment claim.

The Fourth Circuit has recognized a limited Fourth Amendment right to bodily privacy for inmates. See Lee v. Downs, 641 F.2d 1117, 1119 (4th Cir. 1981) ("Most people . . . have a special

sense of privacy in their genitals, and involuntary exposure of them in the presence of people of the other sex may be especially demeaning and humiliating. When not reasonably necessary, that sort of degradation is not to be visited upon prisoners."). Thus, "when not reasonably necessary, exposure of a prisoner's genitals to members of the opposite sex violates his constitutional rights." Strickler v. Waters, 989 F.2d 1375, 1387-88 (4th Cir. 1993).

Under the Fourth Amendment, a search is reasonable if the need for the search outweighs the invasion of personal rights that the search entails. See Bell v. Wolfish, 441 U.S. 520, 559 (1979) (upholding prison policy providing for a visual body cavity strip search of pretrial detainees, finding that prisons are places fraught with serious security dangers in which inmates attempt to secrete contraband by concealing it in body cavities). The Court in Bell held that the following factors must be balanced in determining the constitutionality of a search: the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted. See id.

Here, plaintiff was subject to a randomized search by defendant Thompson. Plaintiff does not contest that, as a general matter, randomized strip searches are reasonably necessary to further legitimate penological interests in protecting the security of institution. See Hudson v. Palmer, 468 U.S. 517 (1984). As noted, plaintiff argues the manner of the search violated the Fourth Amendment because the search could be viewed by other inmates and female staff.

Accepting plaintiff's allegations as true, the court finds no Fourth Amendment violation. Plaintiff acknowledges he was selected for a randomized search and that he was searched in the male restroom behind a partition, which significantly limited his exposure to female officers or other inmates. Accordingly, the manner in which the search was conducted, the justification for

initiating the search, and the place where the search was conducted all weigh in favor of defendant Thompson. See Bell, 441 U.S. at 559.

Plaintiff emphasizes defendant Thompson instructed him to briefly squat towards the floor and cough, which allegedly may have exposed his genitals to female staff (who could look into the restroom through a window) or other inmates in the restroom. However, an "inadvertent encounter" by female corrections officers during the course of an otherwise private strip search does not rise to the level of a constitutional violation. Strickler, 989 F.2d at 1387-88; see also Johnathan Lee X v. Gulmatico, No. 90-6570, 1991 WL 77657, at *1 (4th Cir. May 15, 1991). Additionally, plaintiff has not offered competent summary judgment evidence showing that any female staff saw his genitals during the search. See Wilkins v. Upton, 639 F. App'x 941, 946 (4th Cir. 2016) (concluding plaintiff failed to establish Fourth Amendment violation where "[t]here is no indication from the record that [the plaintiff] had his genitals exposed involuntarily to persons of the opposite sex"). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's Fourth Amendment claim.

Turning to plaintiff's Eighth Amendment claim, plaintiff attests defendant Thompson stared at his genitals during the search. The Eighth Amendment protects against cruel and unusual punishments, including sexual abuse of inmates. See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (holding Eighth Amendment protects inmates from violent assaults); Jackson v. Holley, 666 F. App'x 242, 244 (4th Cir. 2016). Where, however, the claim is premised on "voyeurism" that occurred in the context of a lawful strip search, prison officials do not contravene the Eighth Amendment if the exposure was reasonably necessary to conduct the search. See Lee, 641 F.2d at 1119; cf. Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (holding prison officials do not violate

9

the Eighth Amendment where amount of force used was necessary to maintain or restore discipline).

Here, as set forth above, the strip search at issue was reasonably necessary to further important penological interests. To the extent plaintiff's claim is that defendant Thompson exceeded the scope of a reasonable search, plaintiff fails to offer any evidence in support of this allegation. For example, although plaintiff attests defendant Thompson "kept his eyes on his groin area" during the search, defendant Thompson was conducting a strip search and thus was required to look at plaintiff's groin area. (Pl.'s Aff. (DE 49-1) ¶ 15). Plaintiff acknowledged as much during his interactions with prison officials after the search. (See Dorman Aff. Ex. D (DE 45-5) at 9-10). Plaintiff offers no evidence that defendant Thompson viewed plaintiff's genitals for an excessive amount of time beyond that necessary to conduct the search. But even assuming plaintiff's evidence could be construed to state such a claim, an excessive stare at any inmate's genitals during the course of an otherwise proper strip search does not rise to the level of an Eighth Amendment violation. See Jackson, 666 F. App'x at 244 (holding limited instances of sexual harassment, including placing groin area in prisoner's face, did not state a claim for violation of the plaintiff's constitutional rights); see also Berryhill v. Schriro, 137 F.3d 1073, 1076 (8th Cir. 1998); Green v. Sacchet, No. 02-1835, 2002 WL 32639150, at *4–5 (D. Md. Dec. 10, 2002), aff'd, 61 F. App'x 899 (4th Cir. 2003). Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's Eighth Amendment claim.[4]

---

[4] To the extent plaintiff is alleging defendants violated his rights under the PREA, the claim is without merit. The PREA does not provide for a private cause of action. See Krieg v. Steele, 599 F. App'x 231 (5th Cir. 2015); De'lonta v. Clarke, No. 7:11-CV-00483, 2012 WL 4458648, at *3 (W.D. Va. Sept. 11, 2012) (collecting cases), appeal dismissed, 502 F. App'x 265 (4th Cir. 2012).

2. Retaliation

Plaintiff alleges defendants Dorman and Blackmon violated his constitutional rights by retaliating against him for filing a lawsuit against them. To establish a retaliation claim, plaintiff must show: 1) that he engaged in constitutionally protected First Amendment activity; 2) the defendant took an action that adversely affected that activity; and 3) there was a causal relationship between the plaintiff's protected activity and the defendant's conduct. Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015); see also Booker v. S.C. Dep't of Corr., 855 F.3d 533, 540 (4th Cir. 2017). "[A] plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005).

A claim of retaliation is treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996) (en banc) (noting that "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prison misconduct") (citation omitted). A plaintiff must adduce specific facts supporting the claim of retaliation because bare assertions of retaliation do not establish a claim of constitutional dimension. Adams v. Rice, 40 F.3d 72, 74-75 (4th Cir. 1994).

Plaintiff's retaliation claim is premised on defendants Dorman and Blackmon allegedly pursuing a false disciplinary charge against plaintiff in retaliation for plaintiff filing a prior lawsuit against Harnett C.I. officials. Plaintiff attests that when he informed defendant Dorman about the incident with defendant Thompson, defendant Dorman stated, "you know I'm going to write you up." (Pl.'s Aff. (De 49-1) ¶ 22). Defendant Blackmon also allegedly stated that plaintiff "has a court case after us on a PREA from awhile back." (Id. ¶ 24). Defendant Dorman then responded,

11

"well [expletive] this will be an easy one." (Id. ¶ 25).

Plaintiff has not produced sufficient evidence to survive the instant motion for summary judgment with respect to the retaliation claim. As set forth above, plaintiff admitted to defendants Dorman and Blackmon that his PREA grievance was unfounded. Plaintiff was then charged with knowingly making a false PREA allegation. Filing an accurate disciplinary charge would not deter a person of ordinary firmness from pursuing his First Amendment rights. Constantine, 411 F.3d at 500. (4th Cir. 2005). And defendants Dorman and Blackmon's references to plaintiff's prior lawsuit, without more, are not sufficient evidence to establish retaliation. See Adams, 40 F.3d at 74-75; Cochran, 73 F.3d at 1317.

Furthermore, with respect to the causation element, plaintiff was charged with the A-18 offense after an investigation by a third party. (Pl.'s disciplinary file (DE 45-11) at 15; Dorman Aff. (DE 45-1) ¶ 47). Although defendants Dorman and Blackmon reported the disciplinary infraction, they were not ultimately responsible for plaintiff's formal charge or conviction. Plaintiff therefore has not established a causal relationship between the disciplinary charge and his prior lawsuit. See Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995) (holding "legitimate prison disciplinary report" is "probative and potent summary judgment evidence" that no retaliation occurred); Moore v. Bennett, 777 F. Supp. 2d 969, 984 (E.D.N.C. 2011) (same).

3. Due Process Violations

Plaintiff also alleges defendant Dillard violated his Fourteenth Amendment due process rights by refusing to read a witness statement that plaintiff alleges would have exonerated him of the disciplinary offense.

Plaintiff's claims concerning his disciplinary convictions are barred under Heck v.

Humphrey, 512 U.S. 477 (1994), and its progeny. In order to state a constitutional claim based on an allegedly unlawful disciplinary conviction, or premised on harm caused by actions whose unlawfulness would render the conviction invalid, a plaintiff must allege that the conviction or sentence at issue has been reversed on direct appeal, expunged by executive order, declared invalid by state tribunal authorized to make such determinations, or called into question by a federal court's issuance of a writ of habeas corpus. Id.; see also Edwards v. Balisok, 520 U.S. 641, 645 (1997) (extending Heck rule to claims alleging constitutional deficiencies in prison disciplinary proceedings that resulted in loss of good time credits). Plaintiff has not alleged that his disciplinary convictions have been overturned, and success on this claim would necessarily imply the invalidity of his conviction. Accordingly, the court dismisses this claim without prejudice.[5]

4. Defendant Cobb

Plaintiff alleges in his complaint that defendant Cobb, a Harnett C.I. administrator, violated his rights by not responding to his complaints about defendants. Plaintiff offers no evidence that would support a claim that defendant Cobb violated his constitutional rights. To the extent the claim is based on supervisory liability principles, the absence of an underlying constitutional violation by the remaining defendants precludes liability as to the supervisory official. See Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994).

**CONCLUSION**

Based on the foregoing, the court GRANTS defendants' motion for summary judgment,

---

[5] Plaintiff was released from his state term of imprisonment after he filed the complaint in this action. (See DE 50). To the extent plaintiff no longer satisfies the in custody requirement for seeking federal habeas relief, he may now be without a remedy in federal court as to his claims challenging his disciplinary conviction. See 28 U.S.C. § 2254(a) Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam). The Heck bar, however, remains applicable to this claim where the habeas remedy was available during plaintiff's incarceration. See Wilson v. Johnson, 535 F.3d 262, 267-68 & 268 n.8 (4th Cir. 2008).

(DE 42). Plaintiff's claim challenging his disciplinary conviction is DISMISSED WITHOUT PREJUDICE. The clerk is DIRECTED to close this case.

SO ORDERED, this the 24th day of March, 2020.

LOUISE W. FLANAGAN
United States District Judge